**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM THEODORE BAALS,** | : | **No. 3:23-CV-1853** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **SCI COAL TOWNSHIP PRISON, *et al.*,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff William Theodore Baals initiated the above-captioned action under 42 U.S.C. § 1983[1] by filing a *pro se* complaint. He alleged that prison officials at SCI Coal Township violated his Eighth Amendment rights by exhibiting deliberate indifference to his serious medical needs. Baals subsequently obtained counsel, who filed an amended complaint asserting similar Section 1983 claims. Presently pending is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 on Baals' Eighth Amendment medical indifference claims. Because there are genuine disputes of material fact concerning the constitutionality of the medical care provided to Baals, the court must deny Defendants' Rule 56 motion.

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

## I. BACKGROUND[2]

At the time of most of the at-issue events, Baals was incarcerated at the State Correctional Institution in Coal Township, Pennsylvania (SCI Coal Township).[3] (Doc. 63 ¶ 3). On November 10, 2021, Baals injured his left bicep while performing a deadlift in the prison weight room. (Id. ¶¶ 3-4; Doc. 61-4, Nov. 13, 2025 Baals Dep. 24:8-9 [hereinafter "Baals Dep. __:__"]). Baals recalls that, during a deadlift set, he heard a "pop," likening it to "a dry rubber band snapping," and felt immediate pain in his left arm. (Baals Dep. 27:1-16). As Baals describes it, his bicep "had shot up into [his] upper, almost into [his] armpit area," and "the very top of [his] arm was wadded into a big ball right there. And it was spasming." (Id. at 27:20-23). Baals recounts that a gym worker told him to "go back to the block" and inform corrections officers about the incident. (Id. at 29:16-20).

---

[2] Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. "Statements of material facts in support of, or in opposition to, a motion [for summary judgment] shall include references to the parts of the record that support the statements." Id. Defendants filed their statement of material facts, (Doc. 63), and Baals properly filed his responsive statement of facts, (Doc. 68). To the extent that any statement of fact is undisputed, the court may cite directly to Defendants' statement of material facts rather than particular portions of the record.

[3] Baals filed the instant lawsuit after his release from prison. (See Doc. 1 ¶ 1). He currently resides in Allentown, Pennsylvania. (See Doc. 18 ¶ 1).

When Baals returned to the block, he informed the "CO" of his injury, who then summoned a sergeant. (Id. at 29:21-24). Both officers reacted "in disgust" when they saw Baal's injured arm, referring to it as "an emergency" and calling medical. (Id. at 29:25-30:4). Baals, however, was not seen by any medical provider on November 10, as medical had "refused to come get [him]" despite the request from the security officers. (Id. at 31:3-13). Although the officers believed the situation was emergent, Baals was told that medical would not see him and that he had to "put in a sick call." (Id. at 31:12-32:7).

Baals was seen in the SCI Coal Township medical department the next day (November 11, 2021) by Physician Assistant Brian Davis. (Doc. 63 ¶ 6). According to the corresponding medical records, Baals presented with a weightlifting injury, reporting to P.A. Davis that he had been deadlifting 405 pounds when he "felt a snap over [his] bicep" and realized that his "bicep muscle [wa]s no longer tight." (Doc. 61-3 at 2). P.A. Davis reported that during the exam, he did not "see or feel no [sic] gross deformity over [Baals'] bicep area" and that there was "[n]o 'Popeye' arm," (id.), an assertion that Baals directly disputes, (see Doc. 68 ¶ 9). P.A. Davis's assessment was "bicep tendon tear vs muscle injury," (Doc. 61-3 at 2), and he recommended that Baals be seen that same day by a physician, (id. at 3; Doc. 63 ¶ 10).

Baals was then seen by Benjamin Robinson, M.D.[4] Dr. Robinson examined Baals' arm and told him he "need[s] an MRI." (Baals Dep. 33:1-9). According to Baals, the visit lasted "five or ten minutes," and he was not provided with any treatment or medication at that time. (Id. at 33:9-11, 35:7-14, 20-22). No medical records appear in the Rule 56 record that discuss Dr. Robinson's treatment on November 11.

Baals attests that he assumed he would be transferred to an outside facility for emergency medical care due to the nature of his injury, but he was not. (Id. at 40:11-13, 40:20-41:7). He put in another sick-call request "probably a day or two after," but was not seen again until November 15, 2021. (Id. at 40:13-18; Doc. 63 ¶ 12). On November 15, while Baals was waiting for his appointment, he encountered Dr. Robinson in the hallway. (Baals Dep. 42:17-43:13). Baals asked Dr. Robinson if he had ordered the MRI, to which Dr. Robinson responded, "[Y]eah, you're in. You're going." (Id. at 44:1-3). Baals avers that he did not believe Dr. Robinson, so he checked with a nurse at a computer and asked her whether he was scheduled for an emergency MRI, to which she responded, "[Y]ou're not in for anything." (Id. at 44:3-10).

---

[4] Dr. Robinson passed away on April 23, 2025. (See Doc. 53-2). Rodney Little, administrator of Dr. Robinson's estate, has been substituted in his place. (See Doc. 58 at 2 ¶ 2).

During the November 15 visit, Baals again was examined by P.A. Davis. (See Doc. 61-3 at 4). Baals reported to P.A. Davis that he believed he had "tor[n] his bicep tendon" and was having worsening pain and bruising. (Id.) According to the medical records, Baals was also "upset that he ha[d] not seen orthopedics yet." (Id.) P.A. Davis described Baals as "confrontational" and told him that he had spoken to Dr. Robinson and that Baals would be seen by orthopedics. (Id. at 5).

That same day, Dr. Robinson referred Baals to an outside orthopedic specialist. (Doc. 63 ¶ 15). That orthopedic consult, however, was not scheduled until December 21, 2021. (Id. ¶ 16; Doc. 61-3 at 6). Dr. Robinson's November 15 referral indicates that Baals was referred to Geisinger Medical Center "for evaluation of left bicep's [sic] partial tendon rupture after weightlifting," with the urgency of the referral classified as "Routine." (Doc. 61-3 at 6).

The record provides little information concerning any events that transpired during the following month.[5] On December 17, 2021, Baals was seen by Wanda

[5] In his original complaint, Baals averred that he had spoken with P.A. Davis and Dr. Robinson during a November 17 Covid vaccination appointment, telling them that his left arm was "basically dead and unusable" and informing them that he was being forced to work his prison job despite his injury. (Doc. 1 ¶ 17). Baals claims that both providers ignored his complaints and refused to examine his arm but assured him that he was scheduled to see an orthopedic specialist. (Id.) Baals additionally alleged that he had several friends in the community call SCI Coal Township multiple times to attempt to get him treatment, but that those repeated calls were "ignored." (Id. ¶ 18). These allegations, however, are not supported with evidence, so they will not be considered at the Rule 56 stage.

Coston, M.D., for an unrelated cancer screening appointment. (See Doc. 67-4 at 1-3). During that visit, Baals explained that he had injured his arm about a month prior, believed he had a bicep tear, and had been having left arm weakness and "excruciating" pain with certain movements of the left arm. (Id. at 1). Dr. Coston examined Baals, noted "unsymmetrical musculature at the left upper arm" with the left arm musculature appearing to be "shifted upward," immediately contacted an orthopedic specialist at Geisinger Medical Center, and recommended that Baals be transferred that day to the emergency department at Geisinger with the diagnosis of a possible left bicep tear. (See id. at 2, 6, 7).

For reasons unknown, Baals was not taken to Geisinger Medical Center on December 17. (See id. at 8). Instead, he was seen at his scheduled orthopedic consult on December 21, 2021. (See Doc. 63 ¶ 19; Doc. 61-3 at 23-24). Baals was examined by Todd S. Ellison, PA-C, at the "Hand & Upper Extremity Clinic" in the Geisinger Health System. (Doc. 61-3 at 23). Ellison promptly diagnosed him with a "left subacute distal biceps rupture." (Id. at 24). Baals and Ellison discussed treatment options, an MRI was ordered, and Baals was scheduled for a left distal biceps repair the following day. (Id.)

On December 22, Baals underwent a distal biceps reconstruction with allograft performed by Louis Christopher Grandizio, D.O. (Id. at 10). The operative report indicates that the MRI revealed a "retracted distal biceps tear

with 9 cm of retraction," and that during the surgery, Dr. Grandizio noted "significant scarring and retraction of the tendon." (Id. at 11).

After the surgery, Baals returned to SCI Coal Township and remained in the prison's infirmary until sometime in January 2022. (See id. at 13-20). He frequently expressed a desire to leave the infirmary. (See Doc. 63 ¶¶ 32, 33, 34, 36). Following the biceps reconstruction, Baals was placed in immobilization, restricted from lifting more than the equivalent of a cup of coffee for eight weeks, and referred to occupational therapy. (Doc. 67-1 at 2).

He was seen in follow-up by Dr. Grandizio on February 11, 2022, where it was noted that his nerve neurapraxia was improving and he was cleared for return to work at the prison as of February 25, 2022. (Id.) Notably, Baals recalls that he was forced to work through his injury because the medical department never placed a medical hold on his prison work duties as a tray runner. (Baals Dep. 75:14-76:8).

In November 2023, Baals had an orthopedic follow-up visit. (Doc. 63 ¶ 41). During this visit, Baals complained of pain "over the medial epicondyle and the distal biceps." (Doc. 61-3 at 25). He also reported mild numbness and tingling from the elbow to the hand. (Id.)

On February 11, 2026, Baals was examined by Joshua M. Brown, D.O., FAAEM. (See Doc. 67-1 at 1). Dr. Brown reviewed Baals' medical records and performed a physical examination. (See id. at 1-6).

In Dr. Brown's opinion, there had been a "significant delay" between the initial injury and surgical treatment. (Id. at 4). Dr. Brown further opined, "Given the documented mechanism of injury[—]an acute 'pop' during heavy resisted lifting[—]together with progressive ecchymosis and antecubital pain, a reasonably prudent provider in a primary care, urgent care, or emergency setting should maintain a high index of suspicion for distal biceps tendon rupture." (Id.) He additionally noted that timely surgical repair of a distal biceps tendon rupture "is critical to optimizing outcomes." (Id.) Delays in diagnosis and treatment can cause "tendon retraction," which can render primary repair difficult and instead be more likely to require autograft or allograft reconstruction. (Id. at 4-5).

Dr. Brown concludes:

> In Mr. Baals' case, the delay in diagnosis and surgical intervention likely contributed to significant tendon retraction, necessitating reconstruction with allograft rather than a primary repair. This increased surgical complexity plausibly contributed to his ongoing postoperative pain and functional limitations. To a reasonable degree of medical probability, the delayed access to appropriate orthopedic evaluation and timely surgical repair materially worsened Mr. Baals' clinical course and outcomes. His continued symptoms are consistent with known sequelae of delayed distal biceps tendon repair as described in the orthopedic literature.

(Id. at 5). Dr. Brown likewise found that Baals demonstrated "persistent and permanent sequelae" following surgery, including visible cosmetic deformity, significant and sustained loss of strength, difficulty with exercise, loss of range of motion, persistent numbness, and increased pain during routine daily activities. (Id. at 2-3).

Baals filed his *pro se* Section 1983 lawsuit on November 7, 2023. (See generally Doc. 1). He subsequently obtained representation and filed a counseled, amended complaint in March 2024. (See generally Doc. 18). Following Rule 12(b)(6) motion practice, only defendants P.A. Davis and Dr. Robinson (through Rodney Little, administrator of the estate of Dr. Robinson) remain. (See Docs. 30, 32, 40, 58). Defendants now move for summary judgment under Federal Rule of Civil Procedure 56. (Doc. 61). Baals timely filed a brief in opposition. (Doc. 67). No reply has been filed and the time in which to do so has passed, so Defendants' Rule 56 motion is ripe for disposition.

## II. STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 262 (3d Cir. 2010) (quoting Clark v. Modern Grp. Ltd., 9 F.3d 321, 326 (3d Cir. 1993)).

At the Rule 56 stage, the court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue. Liberty Lobby, 477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 192 (3d Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 252) (alteration in original). Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party. Daubert v. NRA Grp., LLC, 861 F.3d 382, 391 (3d

Cir. 2017) (quoting Berkeley Inv. Grp. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006)).

## III. DISCUSSION

Defendants contend that Baals cannot establish that they acted with deliberate indifference to a serious medical need. The court finds that Baals has proffered more than sufficient evidence to create a genuine dispute of material fact regarding whether Defendants' conduct violated Baals' Eighth Amendment rights.

### A. Eighth Amendment Medical Deliberate Indifference

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment" to incarcerated individuals. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must show that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff." Durham v. Kelley, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would

easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, and denial of reasonable requests for treatment resulting in unnecessary suffering or risk of injury. See Durmer v. O'Carroll, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting Lanzaro, 834 F.2d at 346). Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted). Claims sounding in mere medical negligence will not suffice. Rouse, 182 F.3d at 197.

Defendants do not argue that Baals' biceps tendon rupture does not qualify as a serious medical need. Nor could they. It is patently obvious that such an injury, which involved surgical intervention, meets the standard for a serious medical need under the Eighth Amendment. Instead, Defendants primarily argue that Baals' claims and supporting evidence sound in medical malpractice (or professional negligence) rather than a constitutional violation. The court does not agree.

As noted above, there are multiple ways to establish deliberate indifference to a serious medical need. One of those methods is showing that a defendant intentionally refused to provide care known to be medically necessary. In this case, Baals has proffered evidence that he suffered a serious and extraordinarily painful injury where his biceps tendon ruptured and retracted while lifting weights. Despite marked concern from layperson corrections officers, Baals had to wait until the following day to even see a medical provider at SCI Coal Township. When Baals did see P.A. Davis and Dr. Robinson, neither medical professional provided any treatment beyond examination, not even pain medication.

Baals, who expected to be sent out for emergency care, instead had to submit another sick-call slip to be seen again five days after the initial injury. He even suggested to Defendants that he had torn his bicep tendon—a self-diagnosis that turned out to be accurate. At this time, it appears that both P.A. Davis and Dr. Robinson knew that Baals had suffered a serious soft-tissue injury. On November 15, 2021, P.A. Davis concluded that Baals had a "[p]robable distal bicep tear." (Doc. 61-3 at 4). And during his deposition, P.A. Davis conceded that if a family member or friend had informed him that they had torn their biceps, he would recommend consulting an orthopedic specialist as soon as possible. (See Doc. 67-3, Dec. 1, 2025 Davis Dep. 45:4-46:10).

In Dr. Robinson's November 15 orthopedic referral, it states that he was referring Baals "for evaluation of left bicep[]s partial tendon rupture after weightlifting 405 lbs." (Doc. 61-3 at 6). Notwithstanding this diagnosis, Dr. Robinson classified the referral as "Routine" and scheduled the orthopedic consult for December 21, 2021—more than *five weeks* in the future. (Id.)

This evidence is sufficient to establish a genuine dispute of material fact regarding whether P.A. Davis and Dr. Robinson intentionally refused to provide care known to be medically necessary. A reasonable jury could find that when a prisoner suffers this type of acute injury, experiences loss of function and excruciating pain, presents to medical providers with tell-tale symptoms and even offers a self-diagnosis, is actually diagnosed by the providers as having suffered (or likely suffered) that suggested injury, and yet receives no treatment for over a month, that the inmate's Eighth Amendment rights have been violated. Indeed, a reasonable jury could infer from the evidence that P.A. Davis's and Dr. Robinson's conduct exposed Baals "to undue suffering [and] the threat of tangible residual injury." Lanzaro, 834 F.2d at 346 (citation omitted); see Westfall v. Luna, 903 F.3d 534, 551 (5th Cir. 2018) ("Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate

indifference that results in substantial harm," which can include the "pain suffered during the delay itself") (citation omitted)).[6]

Defendants also contend that Baals received medical treatment and is simply disagreeing with Defendants' chosen course of action. (See Doc. 62 at 8, 12). Generally, "mere disagreement as to the proper medical treatment" does not rise to the level of Eighth Amendment violation. See Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017) (citation omitted). Yet when a prisoner provides extrinsic evidence that his medical care fell below the constitutionally required minimum, he may be able to rebut the presumption that the medical care provided was adequate. See id. at 536. The prisoner-plaintiff must also establish that the defendant acted "with the requisite state of mind when providing that inadequate care." Id. at 535 (citing Durmer, 991 F.2d at 69 n.13).

To the extent Defendants attempt to frame Baals' allegations as an adequacy-of-care claim, he has met his Rule 56 burden in that regard as well. Baals has proffered evidence that he suffered a serious, acute injury that caused

[6] In this regard, Defendants' argument that there is no evidence that they caused Baals harm, (see Doc. 62 at 14-15), is belied by the record. Not only has Baals testified that he suffered loss of function, numbness, and severe pain while he waited over a month for orthopedic intervention, Dr. Brown has opined that the delay in treatment likely resulted in Baals' "ongoing postoperative pain and functional limitations." (See Doc. 67-1 at 5).

an obvious physical deformity,[7] excruciating pain, and loss of function of his arm. He has also proffered extrinsic evidence that P.A. Davis and Dr. Robinson knew he had suffered a biceps tear or biceps tendon rupture but did not provide any treatment beyond scheduling an orthopedic consult five weeks in the future. It appears that neither P.A. Davis nor Dr. Robinson felt that Baals should receive immediate treatment, and no such treatment was ordered or provided.

Those opinions, however, are directly contravened by the professional opinions of both Dr. Coston and Dr. Brown. To wit: Dr. Coston examined Baals on one occasion and immediately contacted an orthopedic specialist and attempted to emergently transfer Baals to an outside hospital that same day. Dr. Brown opined that Baals' injury should have been addressed immediately "in an emergency department or orthopedic setting." (Doc. 67-1 at 4). Yet Baals apparently did not receive *any* treatment for his biceps tendon rupture from November 15 to December 21, 2021, despite Defendants being aware of his diagnosis.

Baals has thus proffered extrinsic evidence as well as expert testimony that P.A. Davis and Dr. Robinson "violate[d] professional standards of care," Pearson,

---

[7] Although P.A. Davis indicated that he did not see or feel a deformity in Baals' biceps on November 11, 2021, (see Doc. 61-3 at 2), Baals testified that the biceps tendon rupture caused an immediate and obvious physical deformity that even layperson corrections officers noticed, (see Baals Dep. 27:20-23, 29:25-30:4). Moreover, Dr. Coston immediately noticed a physical abnormality when she examined Baals on December 17, 2021. At summary judgment, the court must view the facts in a light most favorable to the nonmovant. Thomas, 749 F.3d at 222.

850 F.3d at 535, and acted with the requisite state of mind when doing so, id. at 535-36. Accordingly, if Defendants maintain that Baals is asserting an adequacy-of-care claim, that Eighth Amendment claim also survives Rule 56 scrutiny.

In summary, Baals has proffered sufficient evidence to create a genuine dispute of material fact regarding whether P.A. Davis and Dr. Robinson acted with deliberate indifference to his serious medical needs. As such, a jury, not the court, must ultimately determine whether Defendants' conduct violated Baals' Eighth Amendment rights.

## IV. CONCLUSION

Based on the foregoing, the court will deny Defendants' motion for summary judgment. An appropriate order follows.

**Date:** 9/24/26

**BY THE COURT:**

**JUDGE JULIA K. MUNLEY**
**United States District Court**